IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| STEVEN L. STEWARD & ASSOCIATES, P.A., § § § | |
| *Plaintiff*, § | CIVIL ACTION NO. _____ |
| § | |
| v. § | |
| § | |
| TRUIST FINANCIAL CORPORATION and TRUIST BANK, § § § | |
| *Defendants*. | |

**DEFENDANT'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Defendant Truist Bank ("Truist") removes the above-captioned civil action currently pending in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No. 2020CA5359O (the "State Court Action"), to the United States District Court for the Middle District of Florida, Orlando Division based on federal question jurisdiction and jurisdiction provided by the Class Action Fairness Act of 2005 ("CAFA").[1]  In support thereof, Truist would respectfully show as follows:

I. **STATEMENT OF THE CASE**

On May 21, 2020, Plaintiff Steven L. Steward & Associates, P.A. ("Plaintiff") commenced the State Court Action by filing its Original Class Action Complaint ("the

---

[1] Truist Financial Corporation is not a proper defendant in this lawsuit, as it is the holding company for the appropriate defendant, Truist Bank.  Truist brings this Notice of Removal on behalf of Truist Financial Corporation and any other relevant Truist entities.  In doing so, Truist and Truist Financial Corporation do not waive and specifically reserve any and all defenses, exceptions, rights, and motions, including defenses concerning improper or lack of service.

1

Complaint") in Orange County, Florida.[2]  Truist was served on May 29, 2020, through its registered agent for service of process.  In the Complaint, Plaintiff claims that it acted as borrower's agent that assisted small businesses in applying for federally-backed Paycheck Protection Program ("PPP") loans offered by Truist under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").  Compl. ¶¶ 32–34.  Plaintiff asserts that Truist owes Plaintiff portions of the lender fees Truist allegedly received under the CARES Act and its implementing regulations.  *Id.*  Plaintiff alleges putative class claims for unjust enrichment and for a declaratory judgment pursuant to Fla. Stat. § 86.011, *et seq.*  *Id.* at 16–20.  Plaintiff seeks, among other things, damages, attorneys' fees, and court costs.  *Id.* at 18.

In filing this Notice of Removal, Truist does not waive and specifically reserves any and all defenses, exceptions, rights, and motions, including defenses concerning improper or lack of service.  No statement or omission in this Notice shall be deemed an admission of any allegations or damages sought in the Complaint.

## II.   FEDERAL QUESTION JURISDICTION

Removal to this Court is proper because this Court has original federal question jurisdiction under 28 U.S.C. § 1331, which provides district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  This Court has original jurisdiction here because "a substantial, disputed question of federal law is a necessary element" of the Plaintiff's purported state causes of action.  *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("[A] case may arise under federal law where the vindication of a right under

---

[2] A copy of Plaintiff's Complaint is attached at **Exhibit 1**.

state law necessarily turn[s] on some construction of federal law.").[3] In fact, a substantial and disputed question of federal law is *the* primary and pervasive element of Plaintiff's Complaint. That fundamental and federal question: whether federal law and regulations require Truist to give Plaintiff a portion of federal funds that are to be paid to Truist by a federal agency, based on Plaintiff's purported work to help borrowers apply for and obtain federally-backed loans under a federal program.

Plaintiff brings this action "to recover the monies rightfully owed to agents who assisted consumers in obtaining loans under the CARES Act and the Payroll Protection Program." Compl. at 1. The CARES Act is a federal statute enacted by Congress to address a nationwide problem, and the PPP is the federal program created under it and implemented by a federal agency. *See id.* ¶¶ 1–4. The PPP expands an existing federal program and provides federally-backed loans across the country. *Id.* ¶¶ 4,6.

The CARES Act provides that the Small Business Administration ("SBA") "shall reimburse" lenders for servicing PPP loans and establishes the reimbursement amounts as percentages of the PPP loans serviced. 15 U.S.C. § 636(a)(36)(P)(i). But the statute only briefly addresses agent fees. It does so only to delegate to the SBA authority to limit the fee amount any agent may collect for work connected to the PPP. *Id.* § 636(a)(36)(P)(ii).

Pursuant to this authority, the SBA issued regulations providing that any agent fees could not exceed set amounts the SBA views as "reasonable"—amounts that, like lender fees,

---

[3] This "artful-pleading" doctrine is an established exception to the well-pleaded complaint rule. *Bracciale v. Valdez*, No. 8:17-CV-2040-T-36AEP, 2017 WL 4117806, at *3 (M.D. Fla. Sept. 18, 2017).

are based on the PPP loan amounts. Interim Final Rule, 85 Fed Reg. at 20816; *see also* Compl. ¶ 30.

Plaintiff contends that its work on borrower applications entitles it to agent fees from Truist and that Truist failed to pay Plaintiff the fees owed out of any lender fees Truist received. Compl. ¶¶ 33–34. Plaintiff thus contends that it is entitled to federal funds issued by the federal government as part of a federal program.

Plaintiff calculates the amount of the fees it believes Truist owes using the formulas established by the federal CARES Act and the maximum agent fee amounts set out by the SBA. *Id.* ¶ 31, 33–34. And Plaintiff alleges that its entitlement arises out of its work helping borrowers navigate and comply with the federal program's requirements to receive federally-backed loans. *Id.* Because of this work, Plaintiff asserts, "$761.00 and $1,366.00 belongs to Plaintiff, and was to be provided to Plaintiff via Defendants under the CARES Act, the PPP, and their Rules and Regulations." *Id.* ¶ 34.

Plaintiff tries to cast its purported entitlement to these amounts in state-law terms by alleging a claim for unjust enrichment. Plaintiff alleges that Truist's "[a]ccepting fees provided by the [federal] government resulting from the [PPP] loan approval" is "unjust and inequitable." *Id.* ¶ 50. And Plaintiff claims that "equity requires the portion" of PPP lender fees allegedly "earmarked for agents be provided to Plaintiff for [its] services and assistance" to borrowers applying for PPP loans. *Id.*

But whether Plaintiff is owed any portion of federal funds for work it performed for PPP borrowers hinges on the entirely federal issue of whether the CARES Act and/or the SBA's implementing regulations require Truist to pay Plaintiff those funds. Plaintiff's unjust

enrichment claim thus stems directly from federal law and cannot be resolved without resort to it.

And that federal law is both novel and hotly disputed. Congress enacted the CARES Act just months ago, and the SBA issued evolving guidance over the weeks that followed. Meanwhile, lenders like Truist rushed to serve their small business customers. In recent weeks, entities like Plaintiff have started to claim that they have been denied agent fees for work on PPP applications. Multiple civil actions raising these claims are now pending in federal courts across the country, including at least four other actions naming Truist that are subject to a motion to transfer to the Judicial Panel on Multidistrict Litigation. *See infra* at 12; *see also* Decl. of Thomas Hughes, Jr. ¶ 8 ("Hughes Decl."), attached as **Exhibit 4**.

Whether the CARES Act and PPP require lenders to compensate purported borrower's agents out of any lender fees they receive forms the central issue in these federal actions. It is also the central question here. And it is a question on which Truist and Plaintiff take opposing stances. Because the substance of Plaintiff's claim hinges on a contested question of federal law, it arises under federal law and removal is proper. *See In re Carter,* 618 F.2d 1093, 1101 (5th Cir. 1980) ("The removing court looks to the substance of the complaint, not the labels used in it.").

Plaintiff also seeks "a binding declaration of its rights to be compensated by Defendants" in those amounts of federal funds because of its work assisting borrowers under the federal PPP and CARES Act. Compl. ¶ 58. Plaintiff seeks that declaration pursuant to Florida's Declaratory Judgment Act, Fla. Stat. § 86.011, which permits Florida courts to "render declaratory judgments on the existence, or nonexistence . . . [o]f any immunity, power,

privilege, or right." The Act is "a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts" but "does not confer any substantive rights." *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880–81 (11th Cir. 2016). Plaintiff must therefore show that an actual controversy exists to support its claim for declaratory relief. Plaintiff asserts that an actual controversy exists as to "whether an equitable relationship is established [between Truist and Plaintiff] and whether Plaintiff is entitled to the portion of" Truist's lender fees paid by the SBA under the PPP and CARES Act. Compl. ¶ 52.

Like Plaintiff's unjust enrichment claim, the alleged controversy supporting its declaratory judgment claim stems from and depends on a disputed question of federal law. "[W]hether Plaintiff is entitled to" any federal funds because of its alleged work on PPP loan applications requires the reviewing court to decide whether the CARES Act and the federal regulations implementing that federal statute provide such entitlement. Again, that analysis presents a contested and previously untested issue of federal law. Because Plaintiff's claims cannot be decided without deciding disputed federal questions, Plaintiff's complaint is one that arises under federal law. Removal to this Court is thus proper under 28 U.S.C. §§ 1331 and 1441(a).

### III.    CLASS ACTION FAIRNESS ACT JURISDICTION

CAFA provides an additional, independent basis for removal of this action. CAFA grants federal district courts original jurisdiction over putative class actions where the proposed class contains more than 100 members, any member of the putative class is a citizen of a state different from any defendant, and the amount in controversy exceeds $5,000,000, exclusive of

interest and costs.[4]  28 U.S.C. §§ 1332(d), 1453(b).  CAFA was "enacted to facilitate adjudication of certain class actions in federal court" and should thus "'be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. Rep. No. 109–14, p. 43 (2005)); *see also id.* ("[N]o antiremoval presumption attends cases invoking CAFA."); *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) ("[T]here is no presumption against removal in CAFA cases.").

This Court has original jurisdiction over this case under CAFA, and removal is proper, because (1) the proposed class contains more than 100 members; (2) there is minimal diversity between the parties; and (3) the total amount in controversy exceeds $5,000,000.

### A.   The Proposed Class Contains More than 100 Members

The proposed class satisfies CAFA's numerosity requirement.  *See* 28 U.S.C. § 1332(d)(5)(B).  Plaintiff's Complaint defines the proposed class as: "All PPP Agents in the State of Florida who assisted PPP Lenders' customers with their applications for approved PPP loans within the applicable timeframe but who were not provided any payment of agents' fees by the applicable PPP lender," and alleges that the proposed "Class is composed of thousands of PPP Agents."  Compl. ¶¶ 38, 40.  Accordingly, any requirement that the proposed class

---

[4] CAFA defines "class action" to mean any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action. 28 U.S.C. § 1332(d)(1)(B). Plaintiff filed the State Court Action under Florida Rule of Civil Procedure 1.220, Florida's rule authorizing class actions. The State Court Action is therefore a "class action" as defined by CAFA.

contain more than 100 members is satisfied.[5]  *See Perret v. Wyndham Vacation Resorts, Inc.*, No. 11-CV-61904, 2012 U.S. Dist. LEXIS 21805, at *6 (S.D. Fla. Feb. 21, 2012) (allegations in complaint that "potentially thousands" of class members existed was sufficient on its face to establish jurisdiction).

### B.     Minimal Diversity Exists

CAFA "replace[s] the ordinary requirement of complete diversity of citizenship among all plaintiffs and defendants with a requirement of minimal diversity." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014).  Minimal diversity requires only that the citizenship of one plaintiff be different from the citizenship of one defendant.  28 U.S.C. § 1332(d)(2).

CAFA's minimal diversity requirement is satisfied because diversity exists between Plaintiff and Truist.  Plaintiff is a for-profit Florida corporation with it principal place of business in Winter Park, Florida.  Compl. ¶ 13; *see also* Florida Dept. of State Records, attached as **Exhibit 2**.  Plaintiff is thus a citizen of Florida for purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 1181, 1190 (2010).  Truist is a state-chartered bank organized under the laws of North Carolina with its principal place of business in Charlotte, North Carolina.[6]  Hughes Decl. ¶ 3; *see also* North Carolina Secretary of State Records, attached as **Exhibit 3**.  Truist is thus a citizen of North Carolina for purposes

---

[5] Further, neither Truist nor any Truist entities are a "State, State official[], or other governmental entit[y] against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(A).  Thus, the language in 28 U.S.C. §1332(d)(5)(A) does not apply.

[6] Truist is a wholly-owned subsidiary of Truist Financial Corporation, a North Carolina corporation and bank holding company.  Hughes Decl. ¶ 3; Compl. ¶ 14.

8

of diversity jurisdiction.[7]  28 U.S.C. § 1332(c)(1); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006).  This action therefore meets CAFA's minimal diversity requirement.

### C.   The Amount in Controversy Exceeds $5,000,000

To establish jurisdiction under CAFA, the amount in controversy must exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  The claims of the individual proposed class members are aggregated to determine if the amount in controversy exceeds that required sum.  28 U.S.C. §§ 1332(d)(6); *see also Anderson*, 943 F.3d at 925.  A notice of removal based on CAFA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 574 U.S. at 87–88; *see also* 28 U.S.C. § 1446(a).  The "pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010).

The defendant need not include "[e]vidence establishing the amount" in controversy unless "the plaintiff contests, or the court questions, the defendant's allegation."  *Dart Cherokee*, 574 U.S. at 87–88; *see also* 28 U.S.C. § 1446(c)(2)(B).  Should the defendant's allegations be disputed, "the district court must find by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold."  *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014).  "To determine whether the defendant has carried its burden, a court may rely on evidence put forward by the removing defendant, as well as reasonable

---

[7] The Complaint incorrectly alleges that Truist is a North Carolina corporation.  Compl. ¶ 14. Regardless, the analysis and result are the same: as a North Carolina state-chartered bank with its principal place of business in Charlotte, North Carolina, Truist is a citizen of North Carolina. 28 U.S.C. § 1332(c)(1); *Wachovia Bank*, 546 U.S. at 306.

inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 925. But at no time is a removing defendant "required to prove the amount in controversy beyond all doubt or to banish uncertainty about it." *Pretka*, 608 F.3d at 754. If the court "is uncertain about whether" the jurisdictional amount in controversy is met, it "should err in favor of exercising jurisdiction over the case." Senate Judiciary Committee Report, S. Rep. 109-14, at 42–43.

Truist alleges based on the following calculations that the amount in controversy exceeds $5,000,000 only for the purpose of establishing subject matter jurisdiction under CAFA. Truist's allegations and calculations are not admissions of liability or damages. *See LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial."). And Truist expressly reserves the right to further refine these allegations and calculations and/or identify any additional evidence establishing the amount in controversy should any aspect of the amount of controversy set forth here be challenged.

> a. **The Small Business Administration Capped Agent Fee Amounts**

The CARES Act does not establish any amounts agents may collect. The statute instead provides that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator." 15 U.S.C. § 636(a)(36)(P)(ii). Pursuant to this authority to establish limits on agent fees, the SBA issued regulations providing that any agent fees paid out of lender fees could not exceed:

> (1) One (1) percent [of the loan amount] for loans of not more than $350,000
>
> (2) 0.50 percent for loans of more than $350,000 but less than $2,000,000; and

(3) 0.25 percent for loans of more than $2,000,000.

Interim Final Rule, 85 Fed Reg. at 20816; *see also* Compl. ¶ 30.

### b. Truist Has Funded Over $2.5 Billion in PPP Loans in Florida Alone

Truist has actively participated in the PPP from its inception, in an effort to serve small businesses and help them endure COVID-19's unprecedented economic impact. According to data released by the SBA, as of June 6, 2020, Truist is the fourth-largest lender participant in the PPP in terms of total dollar amount of loans funded. Hughes Decl. ¶ 5. As of June 15, 2020, Truist has funded over $12,899,153,037 in PPP loans for 69,713 borrowers. *Id.* ¶ 6.

Florida borrowers compose a significant percentage of Truist's PPP lending. *Id.* ¶ 7. As of June 15, 2020, Truist has funded $2,575,393,679.00 in PPP loans for 17,921 individual small businesses located in Florida. *Id.* The average loan size amount funded by Truist for each Florida borrower is $143,708.15. *Id.*

Plaintiff alleges that its proposed class consists of "thousands of PPP agents" that assisted Truist borrowers in Florida and were not paid fees by Truist. Compl. ¶ 40. Indeed, Plaintiff alleges that any agent that assisted a Truist PPP borrower in Florida is a class member, because Truist has a uniform practice of not paying agent fees in connection with PPP loans. *Id.* ¶ 37. And, like Plaintiff, some of these agents likely assisted multiple borrowers that sought loans from Truist. *See id.* ¶ 32. The Complaint thus establishes that "thousands" of claims for agent fees exist related to the almost $3 billion in PPP loans Truist funded in Florida. *Id.* ¶ 40.

Based on the Complaint's allegations and Truist's PPP lending activity in Florida, the amount in controversy, aggregated between all proposed class members, well exceeds $5,000,000,000. Even conservative estimates demonstrate this fact. Plaintiff alleges that

"[m]any struggling small businesses who need PPP loans the most" cannot navigate the PPP system on their own" and therefore need to use agents to assist in their PPP applications. *Id.* ¶ 5. If only a quarter of Truist's Florida PPP borrowers (4,480 borrowers) used agents to prepare their applications, and if those borrowers each received the average loan amount of $143,708.15, then each of the 4,480 proposed class members that assisted those borrowers would have a claim for an agent fee of 1% of that loan amount ($1,437.08). Aggregating those claims would involve multiplying $1,437.08 (each class member's claim) by 4,480 (the number of class members), for a total amount in controversy of $6,438,118.40—well over CAFA's required amount.

Similar results obtain if only half of Truist's Florida PPP borrowers (8,960) used an agent to obtain a $76,100 loan—the lower of the two loan amounts Plaintiff alleges it assisted a client in obtaining from Truist. *Id.* ¶ 34. In that situation, the amount in controversy would again easily exceed $5,000,000. Each agent would have a claim for 1% of the loan ($761), for a total of $6,818,560.

Further supporting this conclusion are the multiple putative class actions filed in federal court, of which this Court can take judicial notice. *See* Fed. R. Evid. 201(b); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents."). These class actions allege that the federal courts have CAFA jurisdiction over their claims for agent fees because their proposed class of unpaid agents is sufficiently numerous and the amount in controversy exceeds $5,000,000. *See* Compl. ¶ 17, *Ratliff CPA Firm, PC v. Truist Bank*, 2:20-cv-2207-BHH (D.S.C. filed June 11, 2020); Compl. ¶ 24, *Full Compliance, LLC v. Amerant Bank, N.A.*, Case No. 1:20-cv-22339

(S.D. Fla. filed June 5, 2020); Compl. ¶ 19, *Alliant CPA Group LLC v. Bank of America, Corp.*, Case No. 1:20-cv-02026-MLB (N.D. Ga. filed May 11, 2020); Am. Compl. ¶ 22, *Sport & Wheat CPA PA v. ServisFirst Bank Inc.*, Case No. 3:20-cv-5425-TKW-HTC (N.D. Fla. filed April 26, 2020). The number of these class actions filed across the country have motivated a motion to transfer PPP agent actions to the Judicial Panel on Multidistrict Litigation. *See* Mot. to Transfer, *In re: Paycheck Protection Program ("PPP") Agent Fees Litigation*, MDL No. 2950 (filed May 22, 2020). All four of the federal lawsuits naming Truist are included in that motion to transfer. Hughes Decl. ¶ 8.

### D.  No Exceptions to CAFA Jurisdiction Apply

The exceptions to CAFA jurisdiction, both discretionary and mandatory, hinge upon the citizenship of the defendant or defendants in the putative class action. *See* 28 U.S.C. § 1332(d)(3)–(4). Specifically, the discretionary exceptions apply only if "the primary defendants are citizens of the State in which the action was originally filed," and any mandatory exceptions apply only if a defendant "whose alleged conduct forms a significant basis for the claims . . . is a citizen of the State in which the action was originally filed." *See* 28 U.S.C. §§1332(d)(3), (d)(4)(A)(i)(II)(bb-cc).

Here, Truist is the primary and only proper defendant. As shown above, Truist is a citizen of North Carolina and not of Florida, the State where the State Court Action was originally filed. Accordingly, none of the exceptions to CAFA jurisdiction apply, and removal is proper.

## IV. VENUE IS PROPER

The United States District Court for the Middle District of Florida, Orlando Division, is the proper place to file this Notice of Removal because it is the federal district court that embraces the place where the State Court Action is pending. 28 U.S.C. § 1441(a).

## V. REMOVAL IS TIMELY

Removal of this action is timely because this action was removed on June 18, 2020, and thirty days have not expired since Truist was served with the Complaint on May 29, 2020. 28 U.S.C. § 1446(b)(1).

## V. OTHER PROCEDURAL REQUIREMENTS

Pursuant to 28 U.S.C. § 1446(d), Truist has contemporaneously filed in the State Court Action a copy of this Notice of Removal. Truist has also given written notice to Plaintiff by contemporaneously serving this Notice of Removal on counsel for Plaintiff.

Pursuant to 28 U.S.C. § 1446(a) and Local Rule 4.02, Truist has attached the following:

(i) The Complaint in the State Court Action (Exhibit 1);
(ii) Florida Department of State Records (Exhibit 2);
(iii) North Carolina Secretary of State Records (Exhibit 3);
(iv) Declaration of Thomas Hughes, Jr. (Exhibit 4);
(v) The docket sheet in the State Court Action (Exhibit 5); and
(vi) The remaining documents from the State Court Action (Exhibit 6).[8]

## VI. CONCLUSION

Truist has satisfied the requirements for removal under 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, and hereby removes the State Court Action to this Court and respectfully

---

[8] No orders have been signed by the state judge in this case.

requests that the Court enter such other and further orders as may be necessary to accomplish the requested removal and promote the ends of justice.

WHEREFORE, Defendant Truist Bank hereby removes the action from the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, to the United States District Court for the Middle District of Florida, Orlando Division, and respectfully requests that said District Court assume exclusive jurisdiction of this action and that the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida take no further action.

Dated: June 18, 2020

**MCGUIREWOODS LLP**

/s/  Emily Y. Rottmann
Emily Y. Rottmann
Florida Bar No. 93154
erottmann@mcguirewoods.com
50 North Laura Street, Suite 3300
Jacksonville, FL  32202
Tel: (904) 798-3200 / Fax: (904) 798-3207

*Attorneys and Trial Counsel for Defendants*
*Truist Financial Corporation and Truist Bank*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record on this 18th day of June 2020 via U.S. mail and email as follows:

Jacob Phillips (FL Bar No. 120130)
Edmund A. Normand (FL Bar No. 865590)
NORMAND PLLC
3165 McCrory Place, Ste. 175
Orlando, Florida 32803
 (407) 603-6031 (Tel.)
 (888) 974-2175 (Fax)
jacob.phillips@normandpllc.com
ed@normandpllc.com

*Attorneys for Plaintiff*

                                                         /s/   *Emily Y. Rottmann*