**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | | |
|---|---|---|
| **STEVEN L. STEWARD & ASSOCIATES, P.A.,** | § § § | |
| *Plaintiff*, | § § | **CIVIL ACTION NO. 6:20-CV-01083** |
| **v.** | § § | |
| **TRUIST FINANCIAL CORPORATION and TRUIST BANK,** | § § § § | |
| *Defendants*. | | |

**DEFENDANT TRUIST BANK'S MOTION TO DISMISS THE CLASS ACTION
<u>COMPLAINT AND SUPPORTING MEMORANDUM OF LAW</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS .......................................................................................2

I.    Congress Requires the SBA to Reimburse PPP Lenders...............................2

II.   The Regulatory Framework Focuses on Limiting Agent Fees. ......................4

III.  Steward Had No Reason to Believe Truist Would Pay It Agent Fees...........5

STANDARD OF REVIEW ......................................................................................6

ARGUMENT .......................................................................................................6

I.    Federal Law Does Not Provide a Private Cause of Action for PPP Agent Fees. ..........7

II.   Federal Law Does Not Entitle Agents to PPP Fees. ...................................10

      A.    The CARES Act Limits Agent Fees—It Does Not Create
            an Entitlement that Lenders Must Pay. ..........................................10

      B.    The PPP Regulations, Even if Valid, Do Not Create
            an Entitlement to Agent Fees. .......................................................11

            1.    The SBA Exceeded Its Authority by Providing
                  that Agent Fees Will be Paid Out of Statutorily
                  Mandated Lender Fees. ........................................................12

            2.    The Plain Language of the First IFR Creates
                  No Entitlement to Agent Fees. ..............................................15

            3.    Pre-existing SBA Regulations Confirm There
                  Is No Entitlement to Agent Fees. ..........................................15

            4.    The Common Law Confirms There Is No
                  Entitlement to Agent Fees.....................................................18

      C.    Federal Law Bars Any Claim for Payment of Purported Fees. .....................19

III.  Steward Also Fails to State an Unjust Enrichment Claim under Florida Law. ..........21

      A.    Steward Does Not Allege it Conferred a Direct Benefit on Truist. .................21

      B.    Steward Fails to Allege Truist Had Knowledge of Any Benefit. ....................23

      C.    It is Not Inequitable for Truist to Retain the Fee
            the CARES Act Guarantees. ..........................................................24

CONCLUSION....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*,
   No. 14-0310, 2015 WL 12867010 (M.D. Fla. Jan. 22, 2015)............................................22

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)............................................................................................................11

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) .........................................................................................6

*Am. Safety Ins. Serv. v. Griggs*,
   959 So. 2d 322 (Fla. 5th DCA 2007) ..........................................................................21, 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................6

*Bulluck v. Newtek Small Bus. Fin., Inc.*,
   808 F. App'x 698 (11th Cir. 2020) ....................................................................................9

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)..........................................................................................................12

*Coccaro v. Geico Gen. Ins. Co.*,
   648 F. App'x 876 (11th Cir. 2016) ....................................................................................7

*Cremeens v. City of Montgomery*,
   602 F.3d 1224 (11th Cir. 2010) .......................................................................................12

*In re Failla*,
   838 F.3d 1170 (11th Cir. 2016) .......................................................................................11

*First Fed. Sav. & Loan Ass'n of Lake Worth v. Brown*,
   707 F.2d 1217 (11th Cir. 1983) .........................................................................................8

*Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.*,
   774 F. Supp. 2d 1224 (S.D. Fla. 2011) ..............................................................................8

*In re Gateway Radiology Consultants, P.A.*,
   —B.R.—, No. 19-4971, 2020 WL 3048197 (Bankr. M.D. Fla. June 8, 2020) ........... 14-15

*Johnson v. Catamaran Health Sol., LLC,*
    687 F. App'x 825 (11th Cir. 2017) ...................................................................23

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988)......................................................................................12

*King v. Burwell*,
    135 S. Ct. 2480 (2015)..................................................................................14

*Kopel v. Kopel*,
    229 So. 3d 812 (Fla. 2017)............................................................................21

*Lamie* v. *United States Tr.*,
    540 U.S. 526 (2004)......................................................................................10

*Lindley v. FDIC*,
    733 F.3d 1043 (11th Cir. 2013) ....................................................................14

*Love v. Delta Air Lines*,
    310 F.3d 1347 (11th Cir. 2002) ......................................................................9

*Lyng v. Payne*,
    476 U.S. 926 (1986)......................................................................................12

*McDonald v. S. Farm Bureau Life Ins. Co.*,
    291 F.3d 718 (11th Cir. 2002) ........................................................................9

*Musselman v. Blue Cross & Blue Shield of Alabama*,
    684 F. App'x 824 (11th Cir. 2017) (Tjoflat, J., concurring)..............................8

*Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
    589 F. Supp. 2d 1336 (S.D. Fla. 2008) ...........................................................8

*Peoples' Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*,
    667 So. 2d 876 (Fla. 3d DCA 1996) .............................................................23

*Porsche Cars N. Am., Inc. v. Diamond*,
    140 So. 3d 1090 (Fla. 3rd DCA 2014)...........................................................24

*Profiles, Inc. v. Bank of Am. Corp.*,
    —F. Supp. 3d—, No. 20-0894,
    2020 WL 1849710 (D. Md. Apr. 13, 2020).....................................8, 9, 13, 20

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950)........................................................................................8

*Tectonics, Inc. of Fla. v. Castle Const. Co.*,
  753 F.2d 957 (11th Cir. 1985) ................................................................ 19-21

*United States v. Fidelity Capital Corp.*,
  920 F.2d 827 (11th Cir. 1991) ....................................................................9

*Utley* v. *Donaldson*,
  94 U.S. 29 (1876)......................................................................................18

**Statutes**

15 U.S.C. § 636.............................................................2-3, 10-11, 13, 16

28 U.S.C. § 2201(a) ................................................................................ 7-8

Coronavirus Aid, Relief, and Economic Security Act,
  Pub. L. No. 116-136, 134 Stat. 281 (2020)................................1, 13

Fla. Stat. § 86.011 ......................................................................................7

**Regulations**

13 C.F.R. § 103.1 ...................................................................... 3-4, 14, 16

13 C.F.R. § 103.2 ...............................................................................3, 16

13 C.F.R. § 103.5 .......................................................................... 4, 16-17

13 C.F.R. § 120.10 ....................................................................................4

Business Loan Program Temporary Changes; Paycheck Protection Program,
  85 Fed. Reg. 20,811 (Apr. 15, 2020) ............................... 4, 13, 15-16

Immediate Disaster Assistance Program,
  75 Fed. Reg. 60,588, 60,594 (Oct. 1, 2010)................................17

**Other Authorities**

Restatement (First) of Restitution § 2 (1937) .......................................19

Restatement (Second) of Agency § 441 (1958)....................................19

Restatement (Second) of Contracts § 17 (1981) .............................. 18-19

Restatement (Third) of Agency §§ 1.01, 1.03 (2006).............................14

## **INTRODUCTION**

Plaintiff Steven L. Steward & Associates, P.A. ("Steward") seeks to turn a federal statute's limitation on agent fees into an affirmative entitlement. This effort fails on multiple fronts, and Steward's Class Action Complaint ("Complaint") should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Steward identifies no valid cause of action it can pursue to obtain fees under federal law, a failure that defeats both its claim for declaratory relief and its unjust enrichment claim. Steward casts its claims as arising under state law. But the viability of each depends on whether the federal Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "CARES Act") entitles purported "agents" to receive a portion of the fees the Small Business Administration ("SBA") must pay lenders for processing Paycheck Protection Program ("PPP") loans. The CARES Act provides no such right. Nor do the SBA's implementing regulations—assuming those regulations are a valid exercise of the SBA's authority. Steward's declaratory judgment claim fails in the absence of any underlying cause of action or federal entitlement. Steward's unjust enrichment claim also fails because any remedy under state law for nonpayment of agent fees would conflict with and undermine federal law. As a result, such a remedy is unavailable.

Not only does federal law defeat Steward's claims, but Steward's factual allegations do not support any claim for relief even if state law governed. Steward fails to allege facts showing it conferred a direct benefit on defendant Truist Bank ("Truist"), that Truist knew of

1

any such benefit, or that it would be inequitable for Truist to retain any benefit.[1]   The Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

**I.      Congress Requires the SBA to Reimburse PPP Lenders.**

This action arises from the federal government's unprecedented response to an equally unprecedented national crisis.   The COVID-19 pandemic threw the country and its small businesses into economic turmoil.   To help those businesses survive this uncertain time, Congress created the PPP as part of the CARES Act.   Compl. ¶ 2.   Section 1102 of the Act grafted the PPP onto section 7(a) of the Small Business Act, the federal government's longstanding small business loan program.   The PPP greatly expanded the pool of small businesses eligible to receive SBA-backed loans to cover payroll and other costs through 2020. *See* 15 U.S.C. § 636(a)(36)(A), (D), (F).

Although the SBA would guarantee these loans, the Act asked private lenders to process and fund them.   *Id.* § 636(a)(36)(F)(iii).   The CARES Act required the SBA to reimburse lenders for this work.   The Act provides that "[t]he [SBA] Administrator shall reimburse a lender authorized to make a covered loan."   *Id.* § 636(a)(36)(P)(i).   The Act sets out the specific rates the SBA must pay lenders "based on the balance of the financing outstanding at the time of disbursement of the covered loan."   *Id.*   Under this statutory provision, the SBA must reimburse lenders at established rates.   *Id.*   Any lender that processes a PPP loan is thus entitled under the statute's clear terms to reimbursement by the SBA in a set

---

[1] Truist Financial Corporation is not a proper defendant in this lawsuit, as it is the holding company for the appropriate defendant, Truist Bank.  Truist Bank brings this Motion to Dismiss on behalf of Truist Financial Corporation and any other relevant Truist entities.

amount.  And the statute entitles that lender to receive that reimbursement within five days of the loan's disbursement.  *Id.* § 636(a)(36)(P)(iii).

Congress took a different approach with respect to "agent fees."  Unlike the CARES Act's affirmative requirement that the SBA "shall reimburse a lender" a specific amount based on loan size, the Act addresses only the "Fee limits" applicable to agents.  *Id.* § 636(a)(36)(P)(ii).  Under the statute, "[a]n agent that assists an eligible [PPP] recipient to prepare an application for a covered loan may *not* collect a fee in excess of the *limits* established by the Administrator."  *Id.* (emphasis added).  Congress thereby delegated to the SBA the authority to set a maximum limit on the fees that an agent could collect as part of the PPP.  Congress did not provide that agents *shall* collect a fee, nor did it provide that any particular party *shall* pay agents any fee.

Beyond these provisions, Congress did not otherwise modify the existing 7(a) framework applicable to agents.  Nor did it delegate to the SBA any authority to do so.

Congress instead left intact the existing regulatory scheme for agent fees. Under that framework, borrowers and lenders participating in the 7(a) loan program are not required to use an agent—they may "conduct business with SBA without a representative."  13 C.F.R. § 103.2(a).  But the regulations outline three kinds of agents that borrowers or lenders *may* authorize to assist them in the loan process.  *See id.* § 103.1(a).  The party that chooses to use an agent and authorizes that agent as its representative is the party that pays the agent.  *See id.* For the type of agent at issue here—what the regulations call a "packager" that helps a borrower prepare its application—the borrower authorizes the agent and pays the agent.  *Id.* §

103.1(a)(2).[2]   The agent must, however, execute a written "compensation agreement" governing this arrangement.  *See id*. § 103.5(a).

## II.     The Regulatory Framework Focuses on Limiting Agent Fees.

The SBA purported to exercise its delegated authority to limit agent fees when it promulgated the First Interim Final Rule (the "First IFR").[3]  The First IFR sets out maximum limits for agent fees, states that the fees will be paid by the lender out of origination fees received from the SBA, and may not be collected from the borrower or out of the PPP loan proceeds.  85 Fed. Reg. at 20,816.  The First IFR focuses on what an *agent* affirmatively may *not* do: it may not collect fees from the borrower, out of the PPP loan proceeds, or beyond the set amounts.  In contrast, the IFR's passive reference to fees "being paid" out of lender fees does not place an affirmative obligation on lenders to pay agents no matter if lenders have authorized those agents or permitted borrowers to use them.  It simply finds that the listed amounts would be "reasonable" should a lender authorize and decide to pay an agent.  The First IFR does not establish that lenders *must* pay any person who purports to act as a borrower agent.[4]

---

[2] Along with "packagers," the regulations describe a "Lender Service Provider" that assists and is paid by a lender, and a "Loan Broker" that either assists a borrower or an agent, and is paid by the party it assists.  *Id*. § 103.1(a)(1), (3).

[3] The First IFR states that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10)."  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020).  The First IFR specifically provided that PPP lenders need not comply with the 7(a) program's stringent lending criteria when reviewing PPP loans and could instead rely on borrowers' certifications to determine eligibility.  *Id.*

[4] Beyond stating that lenders would pay agents that assisted borrowers—a change in the existing framework that required borrowers to pay such "packagers"—the First IFR did not

Industry associations communicating with the types of entities that might consider acting as borrower agents share this view that neither the CARES Act nor First IFR guarantees agent fees.  The Association of International Certified Professional Accountants advised CPAs that:

> [E]ven though the Treasury has outlined guidelines related to agency fees, there is a possibility that you will not be paid for your services, even when noting you are an agent to the application. . . It is important to discuss this issue with clients and the banks to ensure there is an understanding, preferably in writing, as to how and when any fees will be paid.

Ex. A, AICPA, *Small Business Loans Under the Paycheck Protection Program: Issues Related to CPA Involvement* (Apr. 22, 2020).  This CPA advocacy organization thus recognized that nothing assured payment to agents claiming to assist with borrower applications—and it voiced that view to accounting firms like Steward.

**III.    Steward Had No Reason to Believe Truist Would Pay It Agent Fees.**

Even with no law, regulation, or industry paper suggesting Steward would receive fees under the PPP, Steward alleges that it performed services for Truist clients for which it now expects payment.  Yet Steward does not allege any facts showing that Truist knew of Steward's involvement with a borrower's application or agreed to pay Steward agent fees.  Steward merely asserts that: (1) it assisted two unidentified Truist clients with their applications for PPP loans, (2) it "directly submitted" these applications "through a portal that [Steward] maintains with [Truist]," (3) Truist processed and funded both loans, and (4) Truist then "refused and/or

---

set out any other provisions for agents that conflict with pre-existing requirements.  In particular, the First IFR did not promulgate any provision conflicting with or eliminating the requirements that an agent be authorized and complete a written compensation agreement to receive payment.

failed to pay" Steward agent fees.[5]  Compl. ¶ 33.

Steward provides no other facts suggesting that Steward ever directly interacted with Truist or Truist representatives, informed Truist of its purported agent role, requested that Truist pay it agent fees, or received any indication (much less agreement) from Truist that Truist would pay it fees.  Despite alleging elsewhere that an agent "*might* . . . interface with the PPP lender" during the PPP process, Steward never alleges that it did so with Truist.  *Id.* ¶ 31 (emphasis added).  Steward instead relies on its conclusory assertions that it "performed services" for Truist clients and that Truist "knew or should have known" of those services and "of the benefits those services provided." *Id.* ¶ 48.

## STANDARD OF REVIEW

"[T]o survive a motion to dismiss, a complaint must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, are insufficient.  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

## ARGUMENT

Steward's Complaint fails in its entirety to state any claim on which relief can be

---

[5] Steward does not clarify how exactly it submitted these applications or how Truist could have known Steward purported to do so "on behalf of" Truist's clients. Compl. ¶ 33.

granted.  Steward's claim for declaratory relief fails because the CARES Act does not provide Steward with a private right of action under federal law.  Steward's remaining state law claim fails because federal law does not entitle Steward to fees, and any state remedy providing those fees would conflict with the purposes and objectives of federal law and is therefore preempted by that law.  Steward also fails to state any claim under Florida law.  The Complaint should be dismissed with prejudice.

## I.      Federal Law Does Not Provide a Private Cause of Action for PPP Agent Fees.

Steward's claims fail because they hinge on the faulty assumption that the CARES Act and implementing regulations permit an agent to pursue a cause of action for fees.  In particular, Count Two of the Complaint seeks a declaration under the Florida Declaratory Judgment Act, Fla. Stat. § 86.011, that Steward conferred on Truist a benefit in the form of SBA reimbursement funds and that equity requires Truist to give Steward a portion of that benefit. Compl. ¶¶ 55–58.  That claim's viability depends on whether federal law provides a private cause of action for agents claiming an entitlement to fees under the federal CARES Act and PPP.  Because federal law does not so provide, this claim fails.

Florida's Declaratory Judgment Act "is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights." *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880–81 (11th Cir. 2016).  Because Truist removed this action under federal question jurisdiction and the Class Action Fairness Act, Florida's procedural rules are inapplicable, and the federal Declaratory Judgment Act, 28

U.S.C. § 2201(a), applies instead.[6]  *See Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011).

The federal Declaratory Judgment Act is procedural only and does not establish an independent cause of action.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  It merely operates to provide a "remedy in cases or controversies for which an independent basis of federal jurisdiction exists."  *First Fed. Sav. & Loan Ass'n of Lake Worth v. Brown*, 707 F.2d 1217, 1220 (11th Cir. 1983).  Steward's claim for declaratory relief thus requires an underlying cause of action for agent fees.  *See Musselman v. Blue Cross & Blue Shield of Alabama*, 684 F. App'x 824, 829 (11th Cir. 2017) (Tjoflat, J., concurring) ("Congress plainly intended that the declaratory judgment serve as a primary remedy available for any underlying cause of action.").

Steward makes no attempt to identify a cause of action—under any body of law— allowing it to pursue a declaratory judgment for agent fees.  *See* Compl. ¶ 57 (alleging only that "an actual controversy" exists).  Count Two therefore fails on its face because Steward does not plead any cause of action supporting it.

Steward does not plead any cause of action because none exists.  "[T]he CARES Act does not expressly provide a private right of action" for agent fees.  *Profiles, Inc. v. Bank of Am. Corp.*, —F. Supp. 3d—, No. 20-0894, 2020 WL 1849710, at *4 (D. Md. Apr. 13, 2020).  The statute establishes only a limit on the fees agents may collect.

The Act also does not provide an implied private right of action for PPP agent fees.

---

[6] "As a practical matter, however, the elements required under the federal or state declaratory judgment acts are not materially different."  *Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 n.1 (S.D. Fla. 2008).

The Small Business Act, which the CARES Act amends, does not confer any private right of action, express or implied. *See United States v. Fidelity Capital Corp.*, 920 F.2d 827, 838 n.39 (11th Cir. 1991); *Bulluck v. Newtek Small Bus. Fin., Inc.*, 808 F. App'x 698, 701–02 (11th Cir. 2020).   As the only court to evaluate the CARES Act for a private right of action has determined, the CARES Act does not change this conclusion or add any private right of action. *Profiles*, —F. Supp. 3d—, 2020 WL 1849710, at *7.

Nothing in the statute reflects any intent by Congress to create a cause of action for agents. *See McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 723 (11th Cir. 2002) ("There must be clear evidence of Congress's intent to create a cause of action."); *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002) (courts rarely impute an intent to create a private right of action when a statute lacks "[r]ights-creating language . . . explicitly conferring a right directly on a class of persons that includes the plaintiff in a case").   The statute reflects only an intent to *prohibit* agents from collecting excessive fees.  Without statutory evidence of Congressional intent to permit agents to pursue claims for fees, the First IFR also does not provide a private right of action.  *See Love*, 310 F.3d at 1353 (if a statute does not confer a private right of action, "such a right may not be created or conferred by regulations promulgated to interpret and enforce it").

Because no underlying cause of action supports Steward's claim for declaratory relief, that claim fails as a matter of law.  This Court should dismiss Count Two.  This conclusion also undermines Steward's additional claim for relief.   That purported state-law unjust enrichment claim depends on an asserted entitlement to agent fees for which federal law does not provide a cause of action and that federal law in fact precludes.

II.     **Federal Law Does Not Entitle Agents to PPP Fees.**

Even if Steward had a private right of action to pursue, its entire case rests on the baseless view that PPP lenders "must" pay agents that assisted borrowers.  Compl. at 8 n.2. Lenders have no such payment obligation under federal law.  To hold otherwise would conflict with the CARES Act's unambiguous language and the broader regulatory scheme.  Because federal law precludes the relief sought here—automatic payment of fees to purported agents using lender reimbursement funds—that relief is also unavailable under state law.

A.     **The CARES Act Limits Agent Fees—It Does Not Create an Entitlement that Lenders Must Pay.**

The CARES Act's plain language bars Steward's claims that it has a right to receive portions of origination fees Truist receives under the CARES Act.  *See Lamie* v. *United States Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.") (citation omitted).   The CARES Act limits agent fees; nothing more.  Congress directed that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the [SBA] Administrator."  15 U.S.C. § 636(a)(36)(P)(ii).  This unequivocal *restraint* on agents cannot impose an affirmative duty on lenders—especially because it does not even mention lenders.

Steward's arguments rely on the premise that the CARES Act entitles anyone who claims to be an agent to be paid by a lender on demand, no matter if the lender agreed to those services or agrees that they were reasonable.[7]  *See* Compl. at 8 n.2.  The statute's negative

_____

[7] The Complaint conflates the CARES Act with the SBA's implementing regulations and ignores the statutory language.  Steward refers to what "the PPP anticipated" and "provided,"

limitation provides no basis to create such an affirmative right.  *See Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.").

Congress knew how to create an affirmative right to fees when it wanted to: it did so for lenders in the provision immediately preceding its limitation on agent fees.  There, the CARES Act provides that "[t]he [SBA] Administrator *shall* reimburse a *lender*" at set rates. 15 U.S.C. § 636(a)(36)(P)(i) (emphases added).  The stark difference between the lender fee provision and the agent fee limitation reflects Congress's deliberate decision not to guarantee fees to agents.  *See In re Failla*, 838 F.3d 1170, 1176–77 (11th Cir. 2016) ("The presumption of consistent usage instructs that 'a word or phrase is presumed to bear the same meaning throughout a text' and that 'a material variation in terms suggests a variation in meaning.'").  The statute cannot be read to create an entitlement that Congress rejected.

**B.     The PPP Regulations, Even if Valid, Do Not Create an Entitlement to Agent Fees.**

Steward also relies on the First IFR to support its claimed entitlement to fees paid by lenders.  Compl. ¶¶ 23, 26–30.  But the SBA's First IFR, by purporting to wrest from lenders the statutorily required fees the SBA must pay, exceeds the SBA's authority to implement the PPP.  Even if that regulation were valid, it still provides no right for agents to be paid regardless of lender authorization.

---

Compl. at 4 n.1, but the PPP itself is not a statute or regulation.  When stating what the PPP "provides," moreover, Steward focuses on the SBA's regulations.  But it is the CARES Act that must be the starting point in evaluating any agent fee claim.

### 1. The SBA Exceeded Its Authority by Providing that Agent Fees Will be Paid Out of Statutorily Mandated Lender Fees.

Congress gave the SBA two responsibilities for PPP fees.  First, it required the SBA to pay lenders set reimbursement amounts within a set time.  Second, it delegated to the SBA the authority to set limits on agent fees.  The SBA properly used its delegated authority to limit agent fees.  But it improperly exceeded that authority by calling for lenders to use their statutory reimbursements to pay agents.  The SBA also threw the once-straightforward system of agent authorization and payment into disarray by providing that lenders would pay agents that they did not authorize—a result Congress could not have intended by its limited delegation.  In two respects, then, the SBA exceeded its authority in issuing the First IFR, and its unauthorized subsection regarding agent fees is invalid.[8]

"[A]n agency's power is no greater than that delegated to it by Congress." *Lyng v. Payne*, 476 U.S. 926, 937 (1986).  Congress may expressly delegate authority to an agency "to elucidate a specific provision of [a] statute," but that agency may not then promulgate a regulation that is "manifestly contrary to the statute."  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).  If the agency's regulation "conflicts with [the] statute, the statute controls."  *Cremeens v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2010).

Congress *expressly* required that lenders receive a prescribed amount of fees under the CARES Act.  Congress's delegation on *agent* fee limits did not mention lender reimbursements.  Instead, in the provisions immediately preceding and following that

---

[8] Truist asserts only that the First IFR's subsection addressing the payment of agent fees from the lender's fee is invalid.  That provision can be severed from the remainder of the First IFR.  *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988).

delegation, Congress obligated the SBA to reimburse lenders.  That statutory language does not admit exception and does not delegate to the SBA the authority to change those reimbursement amounts.

Yet the SBA did just that.  By providing that "[a]gent fees will be paid by the lender out of the fees the lender receives from SBA," the SBA directly contradicted the statutory requirement that the SBA "*shall* reimburse a lender" at set rates.  85 Fed. Reg. at 20,816; 15 U.S.C. § 636(a)(36)(P)(i) (emphasis added).   Under the First IFR, the SBA rewrites the statute to subtract from those set rates varying amounts of agent fees.  This result is contrary to the SBA's limited delegation of authority and to the statute's unambiguous language, which expresses Congress's intent that the SBA would provide specific reimbursement amounts to encourage lender participation in the PPP.  The SBA's regulation reduces those amounts and discourages the voluntary participation that Congress sought to promote.  *Cf. Profiles*, —F. Supp. 3d—, 2020 WL 1849710, at *11.  This direct contradiction of the statute renders the First IFR invalid.

The First IFR also exceeds the SBA's authority by going beyond the scope of its express delegation to provide that lenders would pay agents that assist (and are purportedly authorized by) borrowers.  In expressly delegating to the SBA the authority to limit the fee amounts agents could collect for PPP work, Congress never mentioned who would pay those fees.  Nor did it delegate to the SBA express authority to regulate on that point.  Congress otherwise gave the SBA general authority to implement the CARES Act, *see* Pub. L. No. 116-136, § 1102(a), 134 Stat. 281 (2020), but the statutory scheme shows Congress left no

13

ambiguity or "gap" for the SBA to fill on the question of *who* should pay agent fees.[9]  *See King v. Burwell*, 135 S. Ct. 2480, 2488 (2015).  Instead, the statutory scheme and language show that Congress intended for the pre-existing system of regulations to remain in force, with the SBA simply establishing what fee amounts would be reasonable under that system for the PPP.

Congress enacted the PPP against the backdrop of the existing regulations, which establish that only the party who authorizes an agent to assist them should pay that agent.  13 C.F.R. § 103.1(a).[10]  This approach adhered to the foundational principle that an agency relationship cannot exist unless the principal "manifests assent" for the agent to act on its behalf.  Restatement (Third) of Agency §§ 1.01, 1.03 (2006).  By ensuring that one principal authorized and compensated one agent, the regulations also avoided the untenable situation driving this litigation: an agent seeking payment from a lender it did not assist and by whom it was not authorized.

This involuntary agency problem is not what Congress intended.  Congress would have said so had it wished to upend the longstanding approach to SBA agency relationships.  *Lindley v. FDIC*, 733 F.3d 1043, 1055–56 (11th Cir. 2013) ("Congress is presumed to know the content of existing, relevant law, and where Congress knows how to say something but chooses not to, its silence is controlling."); *see also In re Gateway Radiology Consultants, P.A.*, —B.R.—,

---

[9] Congress left no ambiguity for the SBA to address about who would pay agent fees.  But even if it had, the SBA's interpretation of the statute to require payment by lenders would be unreasonable and invalid.

[10] For example, either an applicant or a lender could authorize a loan broker to assist them, but only one of those parties could authorize and pay that loan broker.  *See id*. § 103.1(a)(3) ("A Loan Broker may be employed and compensated by either the Applicant or the SBA Lender (but not both).").

No. 19-4971, 2020 WL 3048197, at *12 (Bankr. M.D. Fla. June 8, 2020) ("Congress' silence ought to be conclusive that Congress did not intend to exclude an entire class of small businesses . . . from the Paycheck Protection Program.").   Congress instead wanted the existing payment system to remain intact—just with new controls on the fees agents could seek from borrowers they assisted.

Because the SBA exceeded its authority by promulgating a regulation manifestly contrary to the CARES Act and Congress's intent in enacting that statute, the First IFR's provision for agent fees to be paid out of lender fees to borrower's agents is invalid.  Steward therefore has no claim for agent fees against Truist.

### 2. The Plain Language of the First IFR Creates No Entitlement to Agent Fees.

The same result obtains even if the First IFR is a valid exercise of the SBA's authority. Even if the First IFR validly requires lenders to pay agents in some circumstances, it does not affirmatively obligate lenders to use agents or to pay fees to an unauthorized agent that has not complied with the SBA's requirements.  The IFR instead imposes caps on the "total amount that an agent *may* collect" and prohibits agents from "collect[ing] fees from the borrower or . . . out of the PPP loan proceeds."  85 Fed. Reg. at 20,816 (emphasis added).  Like the governing statute, the IFR focuses on limiting agent action and fee collection, not on obligating it.

### 3. Pre-existing SBA Regulations Confirm There Is No Entitlement to Agent Fees.

The SBA's agent fee regulations pre-dating the PPP confirm that Steward lacks any entitlement to agent fees.  Steward omits mention of this pre-PPP framework, but the CARES Act makes clear that this existing context informs the reading of any PPP provisions and

regulations.  15 U.S.C. § 636(a)(36)(B); *cf.* 85 Fed. Reg. at 20,812.  The broader regulatory scheme imposes substantial checks on the role of "agents," including the circumstances under which an agent may be paid.  The PPP-related guidance creates *additional* limits on the amount an agent may be paid—it does not mandate an unchecked transfer of compensation from lenders to purported agents.

The SBA does not require borrowers or lenders to use agents for Section 7(a) loans. *See* 13 C.F.R. § 103.2(a).  But any agent used must be an "authorized representative."  *Id.* § 103.1(a).  As explained above, the SBA has thrown into disarray the pre-existing system under which the party using the agent authorizes and pays that agent.  But here, Steward fails to allege that *any* entity authorized it to work on PPP applications.  Steward merely asserts that it "acted as a borrower's agent"—it does not claim that anyone, much less Truist, in fact authorized its actions.  Compl. ¶ 32.

Even if Steward alleged authorization, the requirement that an agent execute a compensation agreement would still apply and bar Steward from pursuing agent fees.  The SBA's pre-PPP provision mandating that an agreement govern a for-fee agent's pay remains intact.[11]  13 C.F.R. § 103.5(a).  Yet Steward does not allege it had any compensation agreement, much less mention the requirement.  Without an agreement, nothing in the CARES Act or regulations requires (or allows) any party to pay Steward.

---

[11] Secretary of the Treasury Mnuchin confirmed that lenders were not required to use agents and any dealings should be documented in a written agreement during recent Congressional testimony.  Secretary Mnuchin stated that the SBA's guidance said "that banks *could* pay agent fees out of the fees that they received," and that this payment "was intended to be based upon a contractual relationship between the agent and the bank."  J. Hill, Law360, *Mnuchin Says He'll Look At PPP Agent Fee 'Confusion,'* https://www.law360.com/articles/1287681 (June 30, 2020) (emphasis added).

The requirement for a compensation agreement imposes a basic check on third parties involved in SBA loan transactions.  Requiring lenders to pay agents for unauthorized and unverified work would exacerbate the risks of fraud and abuse that for-fee agents pose.  The SBA has identified a "pattern of fraud by loan packagers and other for-fee agents in the 7(a) Loan program."  U.S. Small Bus. Admin., Off. of the Inspector Gen., *Report on the Most Serious Management and Performance Challenges Facing the Small Business Administration in Fiscal Year 2019*, at 8, 9 (Oct. 11, 2018).[12]  The SBA's pre-existing regulations seek to combat this problem by requiring an agent, applicant, and lender to complete SBA Form 159.  That requirement ensures that lenders know agents' identities and can comply with their obligations to avoid doing business with disbarred or suspended agents.  U.S. Small Business Administration, *Lender and Development Company Loan Programs, Standard Operating Procedures (SOP) 50 10 5(J)*, Subpart A, Ch. 1, at 11 (2018).  The written compensation agreement also serves to prevent "agents" and "loan packagers" from "charging inappropriate or unreasonable fees to applicants and lenders."  Immediate Disaster Assistance Program, 75 Fed. Reg. 60,588, 60,594 (Oct. 1, 2010).

Although an agent authorized to perform PPP-related work need not fill out a Form 159, which the SBA marks "[f]or use with 7(a) and 504 Loan Programs,"[13] the execution of a "compensation agreement" between the payor and the agent is required by SBA regulation.  13 C.F.R. § 103.5(a).  And perhaps the SBA will still amend Form 159 or roll out a new form

---

[12] *Available at* https://www.sba.gov/sites/default/files/2019-08/SBA-OIG-Report-19-012.pdf.

[13] *Available at* https://www.sba.gov/sites/default/files/2018-09/Form%20159%20-%20%28FINAL%29%209.10.18.pdf

documenting agent/lender agreements.[14]   Regardless, an agent's obligation to complete an agreement remains.  Yet Steward alleges it is entitled to fees despite failing to allege it executed any such agreement or obtained authorization from Truist to perform the services for which it asks Truist to pay.

Given the risks posed by for-fee agents, it would both impede the SBA's efforts to combat fraud and defy common sense to require lenders to pay unauthorized agents with no written agreement governing their fees.  In particular, there would be no mechanism for lenders to verify agents' identities or the satisfactory nature of any work supposedly performed.  Nor would there be anything to prohibit multiple purported agents from claiming fees for work purportedly performed on behalf of a single borrower.  The regulations are clear, and they preclude Steward's claimed entitlement.

### 4.   The Common Law Confirms There Is No Entitlement to Agent Fees.

Mandating payment of claimed agent fees not only runs contrary to the statutory and regulatory texts, but it upends common law.  By requiring a written agreement, the SBA makes agent compensation a question of contract.   "There can be no contract without the mutual assent of the parties."  *Utley* v. *Donaldson*, 94 U.S. 29, 47 (1876); *see also* Restatement

---

[14] The SBA would be understandably delayed in issuing any such new form given the extremely expedited and often haphazard nature of the PPP's regulatory rollout.  The SBA only released the form that lenders must complete to obtain origination reimbursements on May 21, months after the enactment of the CARES Act's requirement that the SBA pay lenders and do so within five days of loan disbursement.  *See* SBA Procedural Notice, *Paycheck Protection Program Lender Processing Fee Payment and 1502 Reporting Process* (May 21, 2020), *available at* https://www.sba.gov/sites/default/files/2020-05/5000-20028.pdf.  And in Secretary Mnuchin's Congressional testimony, he indicated that Treasury may issue additional guidance clarifying any confusion its agent fee guidance has caused.  *See supra* at n.11.

(Second) of Contracts § 17 (1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.").  The agreement is what creates the payment obligation: "it is inferred that a person promises to pay for services *which he requests or permits another to perform for him* as his agent."  Restatement (Second) of Agency § 441 (1958) (emphasis added).  In contrast, "one has no duty to pay for services officiously rendered without request."  *Id.*; *accord* Restatement (First) of Restitution § 2 (1937).  "A person is not required to deal with another unless he so desires."  *Id.*

Even if the First IFR validly requires lenders to pay agent fees in some cases, it does not require lenders to do so absent a voluntary agreement with the agent.  The Complaint ignores these governing principles by demanding fees that Truist never agreed to pay.

### C.    Federal Law Bars Any Claim for Payment of Purported Fees.

At every turn, federal law precludes the entitlement that Steward claims.  Nothing in the CARES Act or regulations gives Steward (1) a cause of action or (2) a right to agent fees for unauthorized work ungoverned by a compensation agreement.  Steward's declaratory judgment claim, which requires a federal cause of action to support it, therefore fails on both counts to state a claim on which relief can be granted.

Steward's purported state law claim also fails.  Steward cannot pursue a state remedy for agent fees when federal law bars such a remedy.  Giving Steward agent fees under state law would both directly conflict with the CARES Act and stand as an obstacle to the accomplishment of the Act's purposes and objectives.  Federal law therefore preempts any remedy based on state law.  *Tectonics, Inc. of Fla. v. Castle Const. Co.*, 753 F.2d 957, 962 (11th Cir. 1985).

First, federal law neither requires nor *permits* payment of agent fees out of lender fees to an unauthorized agent without a compensation agreement.  The CARES Act does not guarantee fees to an agent or require that a lender share federal funds with an agent.  And even if fully valid, the First IFR does not permit payment to an unauthorized agent who has not complied with the SBA's requirements.  As a result, no state law can require a lender to pay an unauthorized agent without a contract a portion of its federal reimbursement.  Such a requirement would directly contradict the CARES Act and the applicable regulations.  Federal law thus precludes Steward's unjust enrichment claim. *Tectonics*, 753 F.2d at 962.

Second, permitting a state law remedy for a claimed entitlement to agent fees would impede the CARES Act's objectives.  Congress passed the CARES Act "with the goal of affording some relief to American small businesses." *Profiles*, —F. Supp. 3d—, 2020 WL 1849710, at *1.  Congress relied on private lending institutions to accomplish this goal by rapidly processing and funding billions of dollars of loans for small businesses in need.  Compl. ¶¶ 6, 20.  Because lenders could opt not to take on this demanding enterprise, Congress sought to encourage their participation by requiring the SBA to reimburse the lenders for a small portion of their work. *Cf. Profiles*, —F. Supp. 3d—, 2020 WL 1849710, at *11 (noting "the voluntary nature of PPP").

A party cannot invoke state law to take from lenders part of those reimbursement fees the statute provides they receive.  Permitting a state law remedy for agent fees paid out of lender reimbursements would lessen incentives to participate in the PPP and thereby "undermine Congress's goal to maximize relief for American small businesses." *Id.* Permitting a state law remedy for agent fees paid to unauthorized agents with no compensation

agreement would also discourage lender participation by exposing lenders to heightened risks of fraud and liability.  *Supra* at 17–18.  This use of state law is preempted because it would impede the CARES Act's purposes and objectives.  *Tectonics*, 753 F.2d at 962.  Steward cannot pursue its claims for agent fees under federal or state law.

## III.    Steward Also Fails to State an Unjust Enrichment Claim under Florida Law.

Even if Steward could pursue Count I under Florida law, its allegations fail to state a claim on which relief can be granted.  A plaintiff alleging unjust enrichment must show that: (1) the plaintiff has conferred a direct benefit on the defendant; (2) the defendant knows about the benefit; (3) the defendant has accepted or retained the benefit; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit.  *Am. Safety Ins. Serv. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007).

### A.    Steward Does Not Allege it Conferred a Direct Benefit on Truist.

"[T]o prevail on an unjust enrichment claim, the plaintiff must *directly* confer a benefit to the defendant."  *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (emphasis added).  Steward pleads no facts showing it directly conferred any benefit to Truist that Truist knew about.

Steward alleges only that it assisted two borrowers in applying for PPP loans from Truist.  Compl. ¶ 33.  Indeed, Steward describes "assist[ing] the *borrower*" as the only role a borrower's agent performs.  *Id.* ¶ 31 (emphasis added).  Steward does not allege that it assisted Truist in any way during the loan process.  Instead, Steward asserts that "[b]y assisting *borrower*s, agents, including [Steward], expedite the process and benefit [lenders] by ensuring that borrowers complete [their] application[s] quickly."  *Id.* ¶ 35.  In Steward's view, its help in completing applications "facilitat[ed] payment of incentive fees to [Truist] rather than other,

competing lenders." *Id.* Steward therefore believes it conferred a benefit on Truist in the form of those fees. *Id.* ¶¶ 34, 47.

But Steward did not provide Truist those reimbursement funds or have any hand in whether Truist received those fees. Steward does not pay Truist that money, and Steward has no impact on whether Truist receives that money. Truist is entitled to the same reimbursement amount for processing and funding a PPP loan no matter how quickly it processes that loan or how much work is involved. Steward does not allege that the two clients it assisted would not have applied for (or received funding for) a PPP loan from Truist without Steward's assistance.[15] So with or without Steward in the picture, Truist would have funded those clients' loans and received the same fee. And any help those clients may have received from Steward in preparing applications does not translate to a direct benefit for Truist. *See A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 14-0310, 2015 WL 12867010, at \*5–6 (M.D. Fla. Jan. 22, 2015) (auto repair shop's work for customers did not confer benefit on insurer, which merely incurred an obligation to pay because of its contract with the customers).

Nor was Truist in a competition with other lenders to receive limited reimbursement fees. Steward claims that the faster applications came in, the faster Truist could fund loans and claim reimbursement fees it might otherwise have lost to another lender. Compl. ¶ 35. But the Complaint reflects that any initial race for funding was between borrowers, while lenders simply worked to keep up with overwhelming demand. Borrowers rushed to apply for

---

[15] Even if the timing of an application were relevant, Steward does not allege facts showing how it "expedited" the PPP process and provides no basis to conclude that Steward had any impact on Truist's work processing and funding the loans.

funds, and borrowers' need exhausted the first round of PPP funding.  *Id.* ¶ 4.  But that demand also motivated the second funding round—under which more than $130 billion remains available to borrowers.   *Id.*; U.S. Small Business Administration, *Paycheck Protection Program (PPP) Report: Approvals through 6/27/2020*, at 9 (2020).[16]   Given the initial borrower demand, Steward fails to allege facts showing Truist would have processed fewer loans in the first round without borrower agents' involvement—or without Steward's involvement in particular.  And the remaining billions of dollars of funds belies the assertion that any lender or borrower has to compete for PPP funds in any form.

Nothing Steward did had any impact on whether the SBA reimbursed Truist for processing loans.  No connection exists between Steward and these origination fees—the only purported benefit Steward identifies Truist as receiving—much less a direct connection that would support an unjust enrichment claim.  *See Johnson v. Catamaran Health Sol., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (dismissing claim where plaintiff paid membership fees to a third party that in turn paid a premium to defendant); *Peoples' Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (claim failed where the alleged payments in which plaintiff claimed an interest were made by a third party, not plaintiff).

### B.  Steward Fails to Allege Truist Had Knowledge of Any Benefit.

Steward also fails to show that Truist or any Truist representative employee knew of any benefit Steward conferred on Truist.  Steward's allegations of knowledge are entirely

---

[16] *Available at* https://www.sba.gov/sites/default/files/2020-06/PPP_Report_Public_200627%20FInal-508.pdf.

conclusory and unsupported by any facts.

Rather than supply any details indicating that Truist knew Steward was assisting two clients and thereby "benefitting" Truist, Steward relies on "information and belief" to assert that Truist knew its clients used Steward's services.  Compl. ¶ 36.  Steward also hedges, alleging that Truist "knew *or should have known*" of Steward's involvement "and of the benefits those services provided." *Id.* ¶ 48 (emphasis added).  At no point does Steward explain why or how Truist knew Steward was acting as an agent.  Steward also does not explain why or how Truist knew that such action was conferring a benefit on Truist.

These allegations fail on their face to show knowledge.  Simply asserting knowledge as a legal conclusion does not plausibly establish knowledge as required to state a claim for unjust enrichment.  Steward's claim should be dismissed.

**C.     It is Not Inequitable for Truist to Retain the Fee the CARES Act Guarantees.**

Steward's unjust enrichment claim also fails because Truist's actions are not inequitable.  An unjust enrichment hinges on whether "the circumstances are such that it would be inequitable for the defendant to retain the benefit." *Griggs*, 959 So. 2d at 331.  The Court should examine "the particular circumstances of [the] individual case as well as the expectations of the parties to determine whether an inequity would result or whether their reasonable expectations were met." *Porsche Cars N. Am., Inc. v. Diamond,* 140 So. 3d 1090, 1100 (Fla. 3d DCA 2014).

Steward had no reasonable expectation under the circumstances that Truist would pay it agent fees.  First, the CARES Act and regulations do not require Truist to pay those fees and

did not assure Steward of any entitlement to them—a view industry guidance expressed to Steward. *Supra* at 5. Second, Truist never authorized Steward to act as its agent and never agreed to pay Steward agent fees. Third, Steward's allegations show it never completed a compensation agreement as the SBA requires.

Not only did Steward not have a reasonable expectation of receiving fees, Truist had a reasonable expectation that it would not have to pay agent fees if it did not authorize or use an agent. Truist also had a reasonable expectation that it would receive and retain its full and fair reimbursement for processing thousands of loans to assist small businesses. No inequity supports Steward's unjust enrichment claim, and it should be dismissed.

## <u>CONCLUSION</u>

For the reasons above, this Court should dismiss the Complaint with prejudice. This 9th day of July, 2020.

/s/ *Emily Y. Rottmann*
Cheryl L. Haas (*Pro Hac Vice Application Pending*)
Georgia Bar No. 316081
chaas@mcguirewoods.com
Meredith Laughlin Allen (*Pro Hac Vice Application Pending*)
Georgia Bar No. 901999
mlallen@mcguirewoods.com
MCGUIREWOODS LLP
1230 Peachtree Street N.E.,
Suite 2100
Atlanta, GA 30309-3534
T: (404) 443-5500
F: (404) 443-5599

Kathryn M. Barber (*Pro Hac Vice Application Pending*)
Virginia Bar No. 88992
kbarber@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
T: (804) 775-1227
F: (804) 698-2227

Emily Y. Rottmann
Florida Bar No.  93154
erottmann@mcguirewoods.com
McGuireWoods LLP
50 N Laura Street, Suite 3300
Jacksonville, FL 32202
T: (904) 798-3200
F: (904) 798-3207

*Attorneys and Trial Counsel for Truist Bank*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss the Class Action Complaint and Supporting Memorandum of Law has been furnished to all counsel of record via ECF on this 9th day of July 2020.

/s/ *Emily Y. Rottmann*
Emily Y. Rottmann